AB:RJN
F.#2009R01167

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★ SEP 3 0 2010 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

JEROME CARAMELLI,
    also known as "Jerry,"
ANTHONY CUTAIA,
DOMENICO CUTAIA,
    also known as "Danny,"
JOSEPH CUTAIA,
    also known as "Joey,"
    "Joseph DeGerolamo" and
    "The Kid,"
SALVATORE CUTAIA, Jr.,
    also known as "Little Sal,"
SALVATORE CUTAIA,
    also known as "Sal,"
JOSEPH LUBRANO,
    also known as "Big
    Joe,"
ERIC MAIONE,
ANTHONY MANNONE,
    also known as "Anthony
    from Elmont" and "Anthony
    from the Five Towns,"
ANTHONY MANZELLA,
CARLO PROFETA and
JOHN WATSON,

        Defendants.

- - - - - - - - - - - - - - - - X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. <u>10-0010 (S-5)(ENV)</u>
(T. 18, U.S.C., §§ 371,
892(a), 894(a)(1),
924(c)(1)(A)(ii),
924(c)(1)(A)(iii), 924(d),
981(a)(1)(C), 1071, 1951(a),
1955(a), 1955(d), 1962(c),
1962(d), 1963, 2 and 3551
<u>et</u> <u>seq</u>; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C.,
§ 2461(c))

THE GRAND JURY CHARGES:

<u>INTRODUCTION TO ALL COUNTS</u>

      At all times relevant to this Indictment, unless

otherwise indicated:

The Enterprise

   1. La Cosa Nostra ("LCN") was a nationwide criminal enterprise, also known as "the mafia" and "the mob," that operated in the Eastern District of New York and other parts of the United States.  LCN operated through entities known as "families."  The five New York City-based LCN families were the Bonanno, Colombo, Gambino, Genovese and Luchese organized crime families.  LCN, including its leadership, membership and associates, constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact.  LCN engaged in, and its activities affected, interstate and foreign commerce.  LCN was an ongoing organization, whose members functioned as a continuing unit for the common purpose of achieving the objectives of the enterprise.

   2. Each LCN family operated through groups of individuals headed by "captains," who were also referred to as "skippers," "caporegimes" or "capodecinas."  These groups, which were referred to as "crews," "regimes" or "decinas," consisted of "made" members of LCN.  The made members were known as "soldiers," "friends of ours," "good fellows" and "buttons." Persons who were not inducted into a LCN family but who committed

2

criminal activity with, on behalf of or under the protection of an LCN family were known as "associates."

      3.    Each captain was responsible for supervising the criminal activities of his crew and providing crew members and associates with support and protection. In return, the captain received a share of the earnings of each of the crew's members and associates.

      4.    Above the captains of each LCN family were the three highest ranking members of the LCN family. The head of each LCN family was known as the "boss." He was assisted by an "underboss" and a counselor, who was known as the "consigliere." With the assistance of the underboss and consigliere, the boss was responsible for setting policy and resolving disputes between members and associates of his own LCN family and members and associates of other criminal organizations, including but not limited to other LCN families. Each LCN family boss was responsible for approving all significant actions taken by members and associates of his respective family.

      5.    The boss, underboss and consigliere of an LCN family, who were sometimes referred to collectively as the "administration," supervised, supported, protected and disciplined the captains, soldiers and associates within the family and regularly received reports regarding the activities of the members and associates of each crew. In return for their

3

supervision and protection, the boss, underboss and consigliere received part of the illegal earnings of each crew.

6.    The ruling body of LCN was known as the "Commission," the membership of which at various times included the bosses of the five New York City-based families, to wit: the Bonanno, Colombo, Gambino, Genovese and Luchese organized crime families.

The Purposes, Methods and Means of the Enterprise

7.    The principal purpose of LCN was to generate money for its members and associates.  This purpose was implemented by members and associates of LCN through various criminal activities affecting interstate commerce, including arson, financial fraud, credit card fraud, drug trafficking, money laundering, engaging in unlawful monetary transactions, bribery, extortion, kidnaping, illegal gambling, tax evasion, interstate transportation of stolen goods, loansharking and robbery.  The members and associates of LCN also furthered LCN's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

8.    Although the primary purpose of LCN was to generate money for its members and associates, members and associates at times used the resources of their respective families to settle personal grievances and vendettas, sometimes with the approval of their respective families.  For those

4

purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

9. The members and associates of LCN engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities. That conduct included attempting to determine the identities of persons who were cooperating with law enforcement authorities or potential witnesses against members and associates of LCN; attempting to learn about law enforcement investigations and surveillance of the activities of LCN members and associates; and kidnaping, murdering and attempting to murder people who were perceived to be informants or potential witnesses against members and associates of LCN.

10. The organized crime families within LCN shared information and coordinated criminal activities. This included but was not limited to the following:

a. Promoting and carrying out joint ventures between and among LCN families to obtain money through illegal activities;

b. Resolving actual and potential disputes among LCN families regarding the operation, conduct and control of illegal activities including interference with interstate commerce through extortionate extensions of credit and the

5

collection of debts by extortionate means, commonly referred to as "loansharking," infiltration and control of labor unions and labor organizations, illegal gambling, money laundering, fraud and narcotics trafficking;

    c.    Sharing information regarding government witnesses and potential or perceived government witnesses;

    d.    Sharing information regarding law enforcement investigations and surveillance of the activities of LCN members and associates;

    e.    Taking steps to preserve order in, between and among the LCN families, including authorizing acts of murder;

    f.    Approving and disapproving the initiation of new members or soldiers in LCN families;

    g.    Establishing and maintaining certain rules governing the families, administration and members of LCN;

    h.    Keeping persons inside and outside LCN in fear of LCN by identifying LCN with threats, violence and murder; and

    i.    Extending formal recognition to newly-elected bosses of LCN families, and, from time to time, resolving leadership disputes within LCN families.

The Defendants

11.   At various times relevant to this indictment, the defendant JEROME CARAMELLI, also known as "Jerry," was an associate within the Bonanno family.

12.   At various times relevant to this indictment, the defendant DOMENICO CUTAIA, also known as "Danny," was a captain within the Luchese family.

13.   At various times relevant to this indictment, the defendant JOSEPH CUTAIA, also known as "Joey," "Joseph DeGerolamo" and "The Kid," was an associate within the Luchese family.

14.   At various times relevant to this indictment, the defendant SALVATORE CUTAIA, also known as "Sal," was a soldier within the Luchese family.

15.   At various times relevant to this indictment, the defendant ERIC MAIONE was an associate within the Luchese family.

16.   At various times relevant to this indictment, the defendant ANTHONY MANNONE, also known as "Anthony from Elmont" and "Anthony from the Five Towns," was a captain within the Bonanno family.

17.   At various times relevant to this indictment, the defendant JOSEPH LUBRANO, also known as "Big Joe," was a captain within the Luchese family.

7

18. At various times relevant to this Indictment, the defendant CARLO PROFETA was a soldier and acting captain within the Luchese family.

## COUNT ONE
(Racketeering)

19. The allegations contained in paragraphs one through eighteen are realleged and incorporated as if fully set forth in this paragraph.

20. In or about and between January 2001 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JEROME CARAMELLI, also known as "Jerry," JOSEPH CUTAIA, also known as "Joey," "Joseph DeGerolamo" and "The Kid," SALVATORE CUTAIA, also known as "Sal," JOSEPH LUBRANO, also known as "Big Joe," ERIC MAIONE, ANTHONY MANNONE, also known as "Anthony from Elmont" and "Anthony from the Five Towns," and CARLO PROFETA, together with others, being persons employed by and associated with LCN, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), consisting of the racketeering acts set forth below.

8

RACKETEERING ACT ONE
(Extortionate Collection of Credit — John Doe # 1)

21. The defendants named below committed the following acts, either one of which alone constitutes racketeering act one.

A. Extortionate Collection of Credit Conspiracy

22. In or about and between January 2001 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOSEPH CUTAIA and SALVATORE CUTAIA, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit, in the amount of approximately $50,000, from John Doe # 1, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Section 894(a)(1).

B. Extortionate Collection of Credit

23. In or about and between January 2001 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOSEPH CUTAIA and SALVATORE CUTAIA, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit, in the amount of approximately $50,000, from John Doe # 1, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

9

RACKETEERING ACT TWO
(Illegal Gambling – Bookmaking)

24.   The defendants named below committed the following acts, either one of which alone constitutes racketeering act two.

A.   Illegal Gambling – Federal Law

25.   In or about and between October 2008 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERIC MAIONE and CARLO PROFETA, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving bookmaking, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05, 225.10(1), 225.15(1) and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955(a) and 2.

B.   Illegal Gambling – New York Law

26.   In or about and between October 2008 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERIC MAIONE and CARLO PROFETA, together with others, did knowingly and

intentionally advance and profit from unlawful gambling activity by engaging in bookmaking by receiving and accepting, in any one day, more than five bets totaling more than five thousand dollars, in violation of New York Penal Law Sections 225.10(1) and 20.00.

### RACKETEERING ACT THREE
(Extortionate Extension of Credit — John Doe # 1)

27. The defendants named below committed the following acts, any one of which alone constitutes racketeering act three.

A. Extortionate Extension of Credit Conspiracy

28. In or about and between October 2008 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERIC MAIONE and CARLO PROFETA, together with others, did knowingly and intentionally conspire to make one or more extortionate extensions of credit, in the amount of approximately $20,000, to John Doe # 1, in violation of Title 18, United States Code, Section 892(a).

B. Extortionate Extension of Credit

29. In or about and between October 2008 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERIC MAIONE and CARLO PROFETA, together with others, did knowingly and intentionally make one or more extortionate extensions of credit,

11

in the amount of approximately $20,000, to John Doe # 1, in violation of Title 18, United States Code, Sections 892(a) and 2.

C.   Extortionate Collection of Credit Conspiracy

30.   In or about and between October 2008 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERIC MAIONE and CARLO PROFETA, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit, in the amount of approximately $20,000, from John Doe # 1, in violation of Title 18, United States Code, Section 894(a)(1).

D.   Extortionate Collection of Credit

31.   In or about and between October 2008 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERIC MAIONE and CARLO PROFETA, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit, in the amount of approximately $20,000, from John Doe # 1, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

12

RACKETEERING ACT FOUR
(Illegal Gambling - Bookmaking)

32. In or about and between October 2008 and November

2009, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendants JEROME

CARAMELLI and ANTHONY MANNONE, together with others, did

knowingly and intentionally conduct, finance, manage, supervise,

direct and own all or part of an illegal gambling business, to

wit: a gambling business involving bookmaking, which operated in

violation of the laws of the State of New York, to wit: New York

Penal Law Sections 225.05, 225.15(1) and 20.00, which involved

five or more persons who conducted, financed, managed,

supervised, directed and owned all or part of such business and

which remained in substantially continuous operation for a period

in excess of 30 days and had a gross revenue of at least $2,000

in any single day, in violation of Title 18, United States Code,

Sections 1955(a) and 2.

RACKETEERING ACT FIVE
(Extortionate Collection of Credit
Conspiracy - John Doe # 1)

33. In or about and between October 2008 and February

2009, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendants JEROME

CARAMELLI, SALVATORE CUTAIA, ANTHONY MANNONE and CARLO PROFETA,

together with others, did knowingly and intentionally conspire to

participate in the use of extortionate means to collect and

13

attempt to collect one or more extensions of credit, in the amount of approximately $193,000, from John Doe # 1, in violation of Title 18, United States Code, Section 894(a)(1).

RACKETEERING ACT SIX
(Extortionate Collection of Credit
Conspiracy - John Doe # 3)

34.   In or about and between October 2008 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JEROME CARAMELLI, SALVATORE CUTAIA, ANTHONY MANNONE and CARLO PROFETA, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect one or more extensions of credit, in the amount of approximately $193,000, from John Doe # 3, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Section 894(a)(1).

RACKETEERING ACT SEVEN
(Extortionate Collection of Credit
Conspiracy - John Doe # 4)

35.   In or about and between October 2008 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JEROME CARAMELLI, SALVATORE CUTAIA, ANTHONY MANNONE and CARLO PROFETA, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit, in the

14

amount of approximately $193,000, from John Doe # 4, an
individual whose identity is known to the grand jury, in
violation of Title 18, United States Code, Section 894(a)(1).

RACKETEERING ACT EIGHT
(Larceny by Extortion - New York Law - John Doe # 2)

36.   The defendants named below committed the following
acts, any one of which alone constitutes racketeering act eight.

A.   Larceny by Extortion in the Fourth Degree -
     John Doe # 2

37.   In or about and between October 2008 and February
2009, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants JOSEPH
CUTAIA and SALVATORE CUTAIA, together with others, did knowingly
and intentionally steal property, to wit: a quantity of money,
from John Doe # 2, an individual whose identity is known to the
grand jury, by means of extortion, to wit: by compelling and
inducing John Doe # 2 to deliver such property to members and
associates of LCN by instilling in him fear that if the property
were not so delivered, the defendants, together with others,
would cause physical injury to, damage property of, and cause
material harm with respect to the health, safety, business,
calling, career, financial condition, reputation and personal
relationships of John Doe # 2 in the future, in violation of New
York Penal Law Sections 155.30 and 20.00.

15

B.   Conspiracy to Commit Larceny by Extortion in the Second
     Degree - John Doe # 2

38.   In or about and between October 2008 and February
2009, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants JOSEPH
CUTAIA and SALVATORE CUTAIA, together with others, did knowingly
and intentionally conspire to steal property, to wit: a quantity
of money, from John Doe # 2, by means of extortion, to wit: by
compelling and inducing John Doe # 2 to deliver such property to
members and associates of LCN by instilling in him fear that if
the property were not so delivered, the defendants, together with
others, would cause physical injury to and damage property of
John Doe # 2 in the future, in violation of New York Penal Law
Sections 155.40 and 105.10(1).

C.   Larceny by Extortion in the Second Degree -
     John Doe # 2

39.   In or about and between October 2008 and February
2009, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants JOSEPH
CUTAIA and SALVATORE CUTAIA, together with others, did knowingly
and intentionally steal and attempt to steal property, to wit, a
quantity of money, from John Doe # 2, by means of extortion, to
wit: by compelling and inducing John Doe # 2 to deliver such
property to members and associates of LCN by instilling in him
fear that if the property were not so delivered, the defendants,

16

together with others, would cause physical injury to and damage property of John Doe # 2 in the future, in violation of New York Penal Law Sections 155.40, 110.00 and 20.00.

RACKETEERING ACT NINE
(Robbery and Robbery Conspiracy - John Doe # 5)

40.   The defendants named below committed the following acts, any one of which alone constitutes racketeering act nine.

A.   State Robbery Conspiracy

41.   In or about and between 2004 and 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOSEPH CUTAIA and SALVATORE CUTAIA, together with others, did knowingly and intentionally conspire to forcibly steal property, to wit: proceeds of an electronics and appliance retail store, from John Doe # 5, an individual whose identity is known to the grand jury, in Brooklyn, New York and were aided by another person actually present, in violation of New York Penal Law Sections 160.10 and 105.10.

B.   State Robbery

42.   In or about and between 2004 and 2005, both dates being approximate and inclusive, within the Eastern District of New York, the defendants JOSEPH CUTAIA and SALVATORE CUTAIA, together with others, did knowingly and intentionally forcibly steal property, to wit: proceeds of an electronics and appliance retail store, from John Doe # 5 in Brooklyn, New York and were

17

aided by another person actually present, in violation of New York Penal Law Section 160.10.

C.   Hobbs Act Robbery Conspiracy

43.   In or about and between 2004 and 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOSEPH CUTAIA and SALVATORE CUTAIA, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: robbery of John Doe # 5 of proceeds of an electronics and appliance store in Brooklyn, New York, in violation of Title 18, United States Code, Section 1951(a).

D.   Hobbs Act Robbery

44.   In or about and between 2004 and 2005, both dates being approximate and inclusive, within the Eastern District of New York, the defendants JOSEPH CUTAIA and SALVATORE CUTAIA, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: robbery of John Doe # 5 of proceeds of an electronics and appliance store in Brooklyn, New York, in violation of Title 18, United States Code, Section 1951(a).

18

RACKETEERING ACT TEN
(Robbery and Robbery Conspiracy - John Doe # 6)

45.  The defendants named below committed the following acts, any one of which alone constitutes racketeering act ten.

A.  State Robbery Conspiracy

46.  On or about and between July 1, 2009 and August 31, 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOSEPH CUTAIA, SALVATORE CUTAIA and JOSEPH LUBRANO, together with others, did knowingly and intentionally conspire to forcibly steal property, to wit: narcotics and narcotics proceeds, from John Doe # 6, an individual whose identity is known to the grand jury, in Staten Island, New York, and, in the course of such robbery, to carry a deadly weapon, threaten the immediate use of a dangerous instrument and display what appeared to be a firearm, in violation of New York Penal Law Sections 160.15 and 105.10.

B.  State Robbery

47.  On or about and between July 1, 2009 and August 31, 2009, both dates being approximate and inclusive, within the Eastern District of New York, the defendant JOSEPH CUTAIA, together with others, did knowingly and intentionally forcibly steal property, to wit: narcotics and narcotics proceeds from John Doe # 6, in Staten Island, New York, and, in the course of such robbery, did carry a deadly weapon, threaten the immediate

19

use of a dangerous instrument and display what appeared to be a firearm, in violation of New York Penal Law Section 160.15.

      C.    <u>Federal Robbery Conspiracy</u>

      48.  On or about and between July 1, 2009 and August 31, 2009 both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOSEPH CUTAIA, SALVATORE CUTAIA and JOSEPH LUBRANO, together with others, did knowingly and intentionally conspire to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, by robbery, to wit: robbery of John Doe # 6 of narcotics and narcotics proceeds in Staten Island, New York, in violation of Title 18 United States Code, Section 1951(a).

      D.    <u>Federal Robbery</u>

      49.  On or about and between July 1, 2009 and August 31, 2009 both dates being approximate and inclusive, within the Eastern District of New York, the defendant JOSEPH CUTAIA, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: robbery of John Doe # 6 of narcotics and narcotics proceeds in Staten Island, New York, in violation of Title 18 United States Code, Section 1951(a).

RACKETEERING ACT ELEVEN
(Robbery and Robbery Conspiracy - John Doe # 7)

50.   The defendants named below committed the following acts, either one of which alone constitutes racketeering act eleven.

A.   State Robbery Conspiracy

51.   On or about and between July 1, 2009 and September 31, 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOSEPH CUTAIA, SALVATORE CUTAIA and JOSEPH LUBRANO, together with others, did knowingly and intentionally conspire to forcibly steal property, to wit: proceeds of an illegal bookmaking operation, from John Doe # 7, an individual whose identity is know to the Grand Jury, in Staten Island, New York, and, in the course of such robbery, to carry a deadly weapon, threaten the immediate use of a dangerous instrument and display what appeared to be a firearm, in violation of New York Penal Law Sections 160.15 and 105.10.

B.   State Robbery

52.   On or about and between July 1, 2009 and September 31, 2009, both dates being approximate and inclusive, within the Eastern District of New York, the defendants JOSEPH CUTAIA and SALVATORE CUTAIA, together with others, did knowingly and intentionally forcibly steal property, to wit: proceeds of an

21

illegal bookmaking operation, from John Doe # 7 in Staten Island, New York, and, in the course of such robbery, did carry a deadly weapon, threaten the immediate use of a dangerous instrument and display what appeared to be a firearm, in violation of New York Penal Law Section 160.15.

RACKETEERING ACT TWELVE<br>(Robbery and Robbery Conspiracy - John Doe # 5)

53.   The defendants named below committed the following acts, any one of which alone constitutes racketeering act twelve.

A.   State Robbery Conspiracy

54.   On or about and between October 30, 2009 and November 11, 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOSEPH CUTAIA and SALVATORE CUTAIA, together with others, did knowingly and intentionally conspire to forcibly steal property, to wit: proceeds of an electronics and appliance retail store, from John Doe # 5 in Brooklyn, New York, and, in the course of such robbery, to carry a deadly weapon, threaten the immediate use of a dangerous instrument and display what appeared to be a firearm, in violation of New York Penal Law Sections 160.15 and 105.10.

B.   Attempted State Robbery

55.   On or about and between October 30, 2009 and November 11, 2009, both dates being approximate and inclusive, within the Eastern District of New York, the defendants JOSEPH

22

CUTAIA and SALVATORE CUTAIA, together with others, did knowingly and intentionally attempt to forcibly steal property, to wit: proceeds of an electronics and appliance retail store from John Doe # 5 in Brooklyn, New York, and, in the course of such robbery, did carry a deadly weapon, threaten the immediate use of a dangerous instrument and display what appeared to be a firearm, in violation of New York Penal Law Section 160.15 and 110.05.

      C.    Federal Robbery Conspiracy

      56.  On or about and between October 30, 2009 and November 11, 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOSEPH CUTAIA and SALVATORE CUTAIA, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: robbery of John Doe # 5 of proceeds of an electronics and appliance store in Brooklyn, New York, in violation of Title 18, United States Code, Section 1951(a).

      D.    Attempted Federal Robbery

      57.  On or about and between October 30, 2009 and November 11, 2009, both dates being approximate and inclusive, within the Eastern District of New York, the defendants JOSEPH CUTAIA and SALVATORE CUTAIA, together with others, did knowingly and intentionally attempt to obstruct, delay and affect commerce,

and the movement of articles and commodities in commerce, by robbery, to wit: robbery of John Doe # 5 of proceeds of an electronics and appliance store in Brooklyn, New York, in violation of Title 18, United States Code, Section 1951(a).

(Title 18, United States Code, Sections 1962(c), 1963 and 3551 et seq.)

## COUNT TWO
(Racketeering Conspiracy)

58.    The allegations contained in paragraphs one through eighteen are realleged and incorporated as if fully set forth in this paragraph.

59.    In or about and between January 2001 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JEROME CARAMELLI, also known as "Jerry," JOSEPH CUTAIA, also known as "Joey," "Joseph DeGerolamo" and "The Kid," SALVATORE CUTAIA, also known as "Sal," JOSEPH LUBRANO, also known as "Big Joe," ERIC MAIONE, ANTHONY MANNONE, also known as "Anthony from Elmont" and "Anthony from the Five Towns," and CARLO PROFETA, together with others, being persons employed by and associated with LCN, an enterprise that engages in, and the activities of which affect, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise

24

through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5).

60.   The pattern of racketeering activity through which the above-named defendants, together with others, agreed to conduct the affairs of the enterprise consisted of the racketeering acts set forth in paragraphs twenty-one through fifty-seven of Count One as racketeering acts one through twelve, which are realleged and incorporated as if fully set forth herein.   The defendants agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 <u>et</u> <u>seq</u>.)

COUNT THREE
(Extortionate Collection of Credit Conspiracy – John Doe # 1)

61.   The allegations contained in paragraphs one through eighteen are realleged and incorporated as if fully set forth in this paragraph.

62.   In or about and between January 2007 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DOMENICO CUTAIA, also known as "Danny," JOSEPH CUTAIA, also known as "Joey," "Joseph DeGerolamo" and "The Kid," and SALVATORE CUTAIA, also known as "Sal," together with others, did knowingly and intentionally conspire to participate in the use of

25

extortionate means to collect and attempt to collect one or more
extensions of credit, in the amount of approximately $50,000,
from John Doe # 1.

(Title 18, United States Code, Sections 894(a)(1) and
3551 et seq.)

COUNT FOUR
(Extortionate Collection of Credit - John Doe # 1)

63.   The allegations contained in paragraphs one
through eighteen are realleged and incorporated as if fully set
forth in this paragraph.

64.   In or about and between January 2007 and February
2009, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants
DOMENICO CUTAIA, also known as "Danny," JOSEPH CUTAIA, also known
as "Joey," "Joseph DeGerolamo" and "The Kid," and SALVATORE
CUTAIA, also known as "Sal," together with others, did knowingly
and intentionally participate in the use of extortionate means to
collect and attempt to collect one or more extensions of credit,
in the amount of approximately $50,000, from John Doe # 1.

(Title 18, United States Code, Sections 894(a)(1), 2
and 3551 et seq.)

26

COUNT FIVE
(Illegal Gambling – Bookmaking)

65.   The allegations contained in paragraphs one through eighteen are realleged and incorporated as if fully set forth in this paragraph.

66.   In or about and between October 2008 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERIC MAIONE and CARLO PROFETA, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving bookmaking, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05, 225.10(1), 225.15(1) and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

27

COUNT SIX
(Extortionate Extension of Credit Conspiracy - John Doe # 1)

67.    The allegations contained in paragraphs one
through eighteen are realleged and incorporated as if fully set
forth in this paragraph.

68.    In or about and between October 2008 and February
2009, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants ERIC
MAIONE and CARLO PROFETA, together with others, did knowingly and
intentionally conspire to make one or more extortionate
extensions of credit, in the amount of approximately $20,000, to
John Doe # 1.

(Title 18, United States Code, Sections 892(a) and 3551
et seq.)

COUNT SEVEN
(Extortionate Extension of Credit - John Doe # 1)

69.    The allegations contained in paragraphs one
through eighteen are realleged and incorporated as if fully set
forth in this paragraph.

70.    In or about and between October 2008 and February
2009, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants ERIC
MAIONE and CARLO PROFETA, together with others, did knowingly and

28

intentionally make one or more extortionate extensions of credit, in the amount of approximately $20,000, to John Doe # 1.

(Title 18, United States Code, Sections 892(a), 2 and 3551 et seq.)

## COUNT EIGHT
(Extortionate Collection of Credit Conspiracy - John Doe #1)

71. The allegations contained in paragraphs one through eighteen are realleged and incorporated as if fully set forth in this paragraph.

72. In or about and between October 2008 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ERIC MAIONE and CARLO PROFETA, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit, in the amount of approximately $20,000, from John Doe # 1.

(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

## COUNT NINE
(Extortionate Collection of Credit - John Doe # 1)

73. The allegations contained in paragraphs one through eighteen are realleged and incorporated as if fully set forth in this paragraph.

74. In or about and between October 2008 and February 2009, both dates being approximate and inclusive, within the

29

Eastern District of New York and elsewhere, the defendants ERIC
MAIONE and CARLO PROFETA, together with others, did knowingly and
intentionally participate in the use of extortionate means to
collect and attempt to collect one or more extensions of credit,
in the amount of approximately $20,000, from John Doe # 1.

(Title 18, United States Code, Sections 894(a)(1), 2
and 3551 et seq.)

## COUNT TEN
(Illegal Gambling - Bookmaking)

75.    The allegations contained in paragraphs one
through eighteen are realleged and incorporated as if fully set
forth in this paragraph.

76.    In or about and between October 2008 and November
2009, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants JEROME
CARAMELLI, also known as "Jerry," and ANTHONY MANNONE, also known
as "Anthony from Elmont" and "Anthony from the Five Towns,"
together with others, did knowingly and intentionally conduct,
finance, manage, supervise, direct and own all or part of an
illegal gambling business, to wit: a gambling business involving
bookmaking, which operated in violation of the laws of the State
of New York, to wit: New York Penal Law Sections 225.05,
225.15(1) and 20.00, which involved five or more persons who
conducted, financed, managed, supervised, directed and owned all
or part of such business and which remained in substantially

30

continuous operation for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

## COUNT ELEVEN
(Extortionate Collection of Credit
Conspiracy - John Doe # 1)

77.    The allegations contained in paragraphs one through eighteen are realleged and incorporated as if fully set forth in this paragraph.

78.    In or about and between October 2008 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JEROME CARAMELLI, also known as "Jerry," SALVATORE CUTAIA, also known as "Sal," ANTHONY MANNONE, also known as "Anthony from Elmont" and "Anthony from the Five Towns," and CARLO PROFETA, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit, in the amount of approximately $193,000, from John Doe # 1.

(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

31

COUNT TWELVE
(Attempted Extortionate Collection
of Credit - John Doe # 1)

79.   The allegations contained in paragraphs one through eighteen are realleged and incorporated as if fully set forth in this paragraph.

80.   In or about and between October 2008 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JEROME CARAMELLI, also known as "Jerry," SALVATORE CUTAIA, also known as "Sal," ANTHONY MANNONE, also known as "Anthony from Elmont" and "Anthony from the Five Towns," and CARLO PROFETA, together with others, did knowingly and intentionally participate in the use of extortionate means to attempt to collect one or more extensions of credit, in the amount of approximately $193,000, from John Doe # 1.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

COUNT THIRTEEN
(Extortionate Collection of Credit
Conspiracy - John Doe # 3)

81.   The allegations contained in paragraphs one through eighteen are realleged and incorporated as if fully set forth in this paragraph.

82.   In or about and between October 2008 and February 2009, both dates being approximate and inclusive, within the

32

Eastern District of New York and elsewhere, the defendants JEROME CARAMELLI, also known as "Jerry," SALVATORE CUTAIA, also known as "Sal," ANTHONY MANNONE, "also known as Anthony from Elmont" and "Anthony from the Five Towns," and CARLO PROFETA, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect one or more extensions of credit, in the amount of approximately $193,000, from John Doe # 3.

(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

## COUNT FOURTEEN
(Extortionate Collection of Credit
Conspiracy – John Doe # 4)

83.    The allegations contained in paragraphs one through eighteen are realleged and incorporated as if fully set forth in this paragraph.

84.    In or about and between October 2008 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JEROME CARAMELLI, also known as "Jerry," SALVATORE CUTAIA, also known as "Sal," ANTHONY MANNONE, also known as "Anthony from Elmont" and "Anthony from the Five Towns," and CARLO PROFETA, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect one or more

extensions of credit, in the amount of approximately $193,000, from John Doe # 4.

(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

<u>COUNT FIFTEEN</u>
(Attempted Extortionate Collection
of Credit - John Doe # 4)

85.   The allegations contained in paragraphs one through eighteen are realleged and incorporated as if fully set forth in this paragraph.

86.   In or about and between October 2008 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JEROME CARAMELLI, also known as "Jerry," SALVATORE CUTAIA, also known as "Sal," ANTHONY MANNONE, also known as "Anthony from Elmont" and "Anthony from the Five Towns," and CARLO PROFETA, together with others, did knowingly and intentionally participate in the use of extortionate means to attempt to collect one or more extensions of credit, in the amount of approximately $193,000, from John Doe # 4.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

34

COUNT SIXTEEN
(Collection of Unlawful Debt)

87. The allegations contained in paragraphs one through eighteen are realleged and incorporated as if fully set forth in this paragraph.

88. In or about and between January 2007 and November 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTHONY MANNONE, also known as "Anthony from Elmont" and "Anthony from the Five Towns," together with others, being a person employed by and associated with LCN, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through the collection of unlawful debt, as that term is defined in Title 18, United States Code, Section 1961(6), to wit: debts that were unenforceable under New York State law, specifically, New York Penal Law Section 190.40, in whole and in part as to principal and interest because of the laws relating to usury, and were incurred in connection with the business of lending money and one or more things of value at a rate usurious under New York State law, where the usurious rate was at least twice the enforceable rate.

(Title 18, United States Code, Sections 1962(c), 1963 and 3551 et seq.)

35

COUNT SEVENTEEN
(Hobbs Act Robbery Conspiracy - John Doe # 5)

89.   In or about and between 2005 and 2006, both
dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendants JOSEPH CUTAIA,
also known as "Joey," "Joseph DeGerolamo" and "The Kid," and
SALVATORE CUTAIA, also known as "Sal," together with others, did
knowingly and intentionally conspire to obstruct, delay and
affect commerce, and the movement of articles and commodities in
commerce, by robbery, to wit: robbery of John Doe # 5 of proceeds
of an electronics and appliance store in Brooklyn, New York.

(Title 18, United States Code, Sections 1951(a) and
3551 et seq.)

COUNT EIGHTEEN
(Hobbs Act Robbery - John Doe # 5)

90.   In or about and between 2004 and 2005, both
dates being approximate and inclusive, within the Eastern
District of New York, the defendants JOSEPH CUTAIA, also known as
"Joey," "Joseph DeGerolamo" and "The Kid," and SALVATORE CUTAIA,
also known as "Sal," together with others, did knowingly and
intentionally obstruct, delay and affect commerce, and the
movement of articles and commodities in commerce, by robbery, to

36

wit: robbery of John Doe # 5 of proceeds of an electronics and appliance store in Brooklyn, New York.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

## COUNT NINETEEN
(Hobbs Act Robbery Conspiracy - Pharmacy Employees)

91.    In or about the Spring of 2008, within the Eastern District of New York and elsewhere, the defendant ANTHONY MANZELLA, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce and the movement of articles and commodities in commerce, by robbery, to wit: robbery of the employees of a pharmacy in Staten Island, New York.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

## COUNT TWENTY
(Hobbs Act Robbery - Pharmacy Employees)

92.    On or about May 13, 2008, within the Eastern District of New York, the defendant ANTHONY MANZELLA, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: robbery of the employees of a pharmacy in Staten Island, New York.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

37

COUNT TWENTY-ONE
(Unlawful Use of a Firearm)

93. On or about May 13, 2008, within the Eastern District of New York, the defendant ANTHONY MANZELLA, together with others, did knowingly and intentionally use and carry a firearm during and in relation to one or more crimes of violence, to wit: the crimes charged in Counts Nineteen and Twenty, and did knowingly and intentionally possess said firearm in furtherance of such crimes of violence, which firearm was brandished.

(Title 18, United States Code, Sections 924(c)(1)(A)(ii), 2 and 3551 et seq.)

COUNT TWENTY-TWO
(Hobbs Act Robbery Conspiracy - John Doe # 6)

94. On or about and between July 1, 2009 and August 31, 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOSEPH CUTAIA, also known as "Joey," "Joseph DeGerolamo" and "The Kid," SALVATORE CUTAIA, Jr., also known as "Little Sal," and SALVATORE CUTAIA, also known as "Sal," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: robbery of John Doe # 6 of narcotics and narcotics proceeds in Staten Island, New York.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

38

COUNT TWENTY-THREE
(Hobbs Act Robbery - John Doe # 6)

95.   On or about and between July 1, 2009 and August 31, 2009, both dates being approximate and inclusive, within the Eastern District of New York, the defendants JOSEPH CUTAIA, also known as "Joey," "Joseph DeGerolamo" and "The Kid," and SALVATORE CUTAIA, Jr., also known as "Little Sal," together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: robbery of John Doe # 6 of narcotics and narcotics proceeds in Staten Island, New York.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

COUNT TWENTY-FOUR
(Unlawful Use of a Firearm)

96.   On or about July 1, 2009 and August 31, 2009, both dates being approximate and inclusive, within the Eastern District of New York, the defendants JOSEPH CUTAIA, also known as "Joey," "Joseph DeGerolamo" and "The Kid," and SALVATORE CUTAIA, Jr., together with others, did knowingly and intentionally use and carry a firearm during and in relation to one or more crimes of violence, to wit: the crimes charged in Counts Twenty-Two and Twenty-Three, and did knowingly and intentionally possess said

firearm in furtherance of such crimes of violence, which firearm was brandished.

(Title 18, United States Code, Sections 924(c)(1)(A)(ii), 2 and 3551 et seq.)

COUNT TWENTY-FIVE
(Hobbs Act Robbery Conspiracy - John Doe # 8)

97.  On or about and between October 1, 2009 and October 31, 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH CUTAIA, also known as "Joey," "Joseph DeGerolamo" and "The Kid," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: robbery of John Doe # 8, an individual whose identity is known to the grand jury, of narcotics and narcotics proceeds in Staten Island, New York.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

COUNT TWENTY-SIX
(Hobbs Act Robbery Conspiracy - Jane Doe)

98.  On or about and between October 1, 2009 and October 31, 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH CUTAIA, also known as "Joey," "Joseph DeGerolamo" and "The Kid," together with others, did knowingly

40

and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: robbery of Jane Doe, an individual whose identity is known to the grand jury, of illegal organized crime proceeds.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

## COUNT TWENTY-SEVEN
(Hobbs Act Robbery Conspiracy - John Doe # 5)

99.   On or about and between October 31, 2009 and November 11, 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY CUTAIA, JOSEPH CUTAIA, also known as "Joey," "Joseph DeGerolamo" and "The Kid," and SALVATORE CUTAIA, also known as "Sal," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: robbery of John Doe # 5 of proceeds of an electronics and appliance store in Brooklyn, New York.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

## COUNT TWENTY-EIGHT
(Attempted Hobbs Act Robbery - John Doe # 5)

100.  On or about and between October 31, 2009 and November 11, 2009, both dates being approximate and inclusive, within the Eastern District of New York, the defendants ANTHONY

41

CUTAIA, JOSEPH CUTAIA, also known as "Joey," "Joseph DeGerolamo" and "The Kid," and SALVATORE CUTAIA, also known as "Sal," together with others, did knowingly and intentionally attempt to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: robbery of John Doe # 5 of proceeds of an electronics and appliance store in Brooklyn, New York.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

### COUNT TWENTY-NINE
(Unlawful Use of a Firearm)

101. On or about November 11, 2009, within the Eastern District of New York, the defendants ANTHONY CUTAIA, JOSEPH CUTAIA, also known as "Joey," "Joseph DeGerolamo" and "The Kid," and SALVATORE CUTAIA, also known as "Sal," together with others, did knowingly and intentionally use and carry a firearm during and in relation to one or more crimes of violence, to wit: the crimes charged in Counts Twenty-Seven and Twenty-Eight, and did knowingly and intentionally possess said firearm in furtherance of such crimes of violence, which firearm was discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(iii), 2 and 3551 et seq.)

42

COUNT THIRTY
(Hobbs Act Robbery Conspiracy - John Doe # 9)

102. On or about and between November 1, 2009 and November 19, 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH CUTAIA, also known as "Joey," "Joseph DeGerolamo" and "The Kid," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by robbery, to wit: robbery of John Doe # 9, an individual whose identity is known to the grand jury, at a residence of narcotics and narcotics proceeds in Brooklyn, New York.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

COUNT THIRTY-ONE
(Attempted Hobbs Act Robbery - John Doe # 9)

103. On or about and between November 1, 2009 and November 19, 2009, both dates being approximate and inclusive, within the Eastern District of New York, the defendant JOSEPH CUTAIA, also known as "Joey," "Joseph DeGerolamo" and "The Kid," together with others, did knowingly and intentionally attempt to obstruct, delay and affect commerce and the movement of articles and commodities in commerce, by robbery, to wit: robbery of John

43

Doe # 9 of narcotics and narcotics proceeds in Brooklyn, New York.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

### COUNT THIRTY-TWO
(Unlawful Use of a Firearm)

104. On or about November 19, 2009, within the Eastern District of New York, the defendant JOSEPH CUTAIA, also known as "Joey," "Joseph DeGerolamo" and "The Kid," together with others, did knowingly and intentionally use and carry a firearm during and in relation to one or more crimes of violence, to wit: the crimes charged in Counts Thirty and Thirty-One, and did knowingly and intentionally possess said firearm in furtherance of such crimes of violence, which firearm was discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(iii), 2 and 3551 et seq.)

### COUNT THIRTY-THREE
(Harboring a Fugitive)

105. On or about and between May 19, 2010 and September 11, 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN WATSON, together with others, did knowingly and intentionally harbor and conceal a person, to wit: JOSEPH LUBRANO, for whose arrest a warrant and process had been issued under the provisions

44

of the laws of the United States, so as to prevent JOSEPH
LUBRANO's discovery and arrest, after having notice and knowledge
of the fact that a warrant and process had been issued for the
apprehension of JOSEPH LUBRANO.

(Title 18, United States Code, Sections 1071, 2 and
3551 et seq.)

### COUNT THIRTY-FOUR
(Conspiracy to Harbor and Conceal a Fugitive)

106. On or about and between May 19, 2010 and September
11, 2010, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants JOSEPH
LUBRANO and JOHN WATSON, together with others, did knowingly and
willfully conspire to harbor and conceal a person, to wit: JOSEPH
LUBRANO, for whose arrest a warrant and process had been issued
under the provisions of the laws of the United States, so as to
prevent JOSEPH LUBRANO's discovery and arrest, after having
notice and knowledge of the fact that a warrant and process had
been issued for the apprehension of JOSEPH LUBRANO, contrary to
Title 18, United States Code, Section 1071.

107. In furtherance of the conspiracy and to effect its
objectives, within the Eastern District of New York and
elsewhere, JOSEPH LUBRANO and JOHN WATSON, together with others,
committed and caused to be committed, among others, the following
overt acts:

45

OVERT ACTS

a.    On or about and between May 18, 2010 and
September 11, 2010, both dates being approximate and inclusive,
JOHN WATSON provided comfort and transportation to JOSEPH
LUBRANO;

b.    On or about May 18, 2010, JOHN WATSON falsely
told the Federal Bureau of Investigation that he was unaware of
LUBRANO's whereabouts; and

c.    On or about August 17, 2010, JOHN WATSON
falsely told the Federal Bureau of Investigation that he was
unaware of LUBRANO's whereabouts.

(Title 18, United States Code, Sections 371 and 3551 <u>et</u>
<u>seq.</u>)

CRIMINAL FORFEITURE ALLEGATION
(Counts One, Two and Sixteen)

108.    The United States hereby gives notice to the
defendants charged in Counts One, Two, and Sixteen that, upon
conviction of any such offenses, the government will seek
forfeiture in accordance with Title 18, United States Code,
Section 1963(a), which requires any person convicted of such
offenses to forfeit any property:

a.    the defendants have acquired and maintained an
interest in, in violation of Title 18, United States Code,
Section 1962, which interests are subject to forfeiture to the

46

United States pursuant to Title 18, United States Code, Section 1963(a)(1);

b.   the defendants have an interest in, security of, claims against, and property and contractual rights that afford a source of influence over the enterprise that the defendants established, operated, controlled, conducted and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(2); or

c.   the defendants derived from proceeds obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3), including but not limited to a sum of money equal to at least $580,000 or the amount of proceeds obtained by the defendants for the racketeering activity, in United States currency, for which the defendants are jointly and severally liable.

109.      If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

47

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of such defendant(s) up to the value of the forfeitable property described in this forfeiture allegation.

   (Title 18, United States Code Sections 1963(a) and (m), 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
### (Counts Five and Ten)

   110. The United States hereby gives notice to the defendants charged in Counts Five and Ten, that, upon conviction of such offenses, the government will seek forfeiture in accordance with: (a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses; and (b) Title 18, United States Code, Section 1955(d), which requires any

48

person convicted of such offenses to forfeit any property,
including money, used in violation of Title 18, United States
Code, Section 1955, including but not limited to a
sum of money equal to the net proceeds obtained directly or
indirectly as a result of such offenses in United States
currency, for which the defendants are jointly and severally
liable.

111.    If any of the above-described forfeitable
property, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due
diligence;

b.    has been transferred or sold to, or deposited
with, a third party;

c.    has been placed beyond the jurisdiction of the
court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which
cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,
United States Code, Section 853(p), as incorporated by Title 28,
United States Code, Section 2461(c), to seek forfeiture of any

other property of such defendant(s) up to the value of the

forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 981(a)(1)(C)

and 1955(d); Title 21, United States Code, Section 853(p); Title

28, United States Code, Section 2461(c))

### CRIMINAL FORFEITURE ALLEGATION
(Counts Three and Four, Six through Nine,
Eleven through Fifteen, Seventeen through Twenty, Twenty-Two and
Twenty-Three, Twenty-Five through Twenty-Eight, and Thirty and
Thirty-One)

112. The United States hereby gives notice to the

defendants charged in Counts Three and Four, Six through Nine,

Eleven through Fifteen, Seventeen through Twenty, Twenty-Two and

Twenty-Three, Twenty-Five though Twenty-Eight, and Thirty and

Thirty-One, that, upon conviction of any such offenses, the

government will seek forfeiture in accordance with Title 18,

United States Code, Section 981(a)(1)(C), and Title 28, United

States Code, Section 2461(c), which require any person convicted

of such offense to forfeit any property constituting or derived

from proceeds obtained directly or indirectly as a result of such

offense, including but not limited to any and all property, real

and personal that constitutes or is derived from proceeds

traceable to the commission of the offenses, and all property

traceable to such property, including but not limited to a sum of

money equal to the amount of proceeds obtained as a result of

such offense, for which the defendants are jointly and severally liable.

113.    If any of the forfeitable property, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of such defendant(s) up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

CRIMINAL FORFEITURE ALLEGATION
(Counts Twenty-One, Twenty-Four, Twenty-Nine, and Thirty-Two)

114. The United States hereby gives notice to the defendants, charged in Counts Twenty-One, Twenty-Four, Twenty-Nine and Thirty-Two, that, upon their conviction of any of the offenses charged in Counts Twenty-One, Twenty-Four, Twenty-Nine and Thirty-Two, the government will seek forfeiture in accordance with Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c), which require the forfeiture of any firearm or ammunition involved in or used in any knowing violation of Title 18, United States Code, Section 924, or any violation of any criminal law of the United States, including but not limited to the following:

      a.   One black .40 caliber Glock handgun;

      b.   One black .38 caliber Smith and Wesson handgun; and

      c.   One silver .40 caliber handgun.

115. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the court;

> d. has been substantially diminished in value; or
>
> e. has been commingled with other property which

cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of such defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 924(d); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON

_____
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#2009R01167
FORM DBD-34
JUN 85

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

JEROME CARAMELLI, ANTHONY CUTAIA, DOMENICO CUTAIA,
JOSEPH CUTAIA, SALVATORE CUTAIA, SALVATORE CUTAIA, JR.,
JOSEPH LUBRANO, ERIC MAIONE, ANTHONY MANNONE, ANTHONY MANZELLA,
CARLO PROFETA and JOHN WATSON,

*Defendants.*

## SUPERSEDING INDICTMENT

(T. 18, U.S.C., §§ 371, 892(a), 894(a)(1), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 924(d), 981(a)(1)(C), 1071, 1951(a), 1955(a), 1955(d), 1962(c), 1963, 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
Foreman

*Filed in open court this* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ *day,*

*of* _ _ _ _ _ _ _ _ _ *A.D. 20* _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Clerk*

*Bail, $* _ _ _ _ _ _ _ _ _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

*Rachel Nash, Assistant U.S. Attorney (718-254-6072)*

No. *10-0010 (S-5)(ENV)*